FARRIS, Circuit Judge:
Burley appeals from a decision of the bankruptcy appellate panel (BAP). The BAP reversed the bankruptcy court’s denial of a creditor’s Fed.R.Civ.P. 60(b) motion to set aside the discharge of Burley’s debts.
Burley contends that the BAP decision is invalid: (1) because the BAP was rendered unconstitutional by the Supreme Court’s decision in Northern Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); and (2) because the BAP did not apply the correct standard of review.
We hold that the BAP may issue decisions in all cases in which the order of the bankruptcy court was entered before entry of the. mandate in Marathon. We reverse th'e BAP’s decision setting aside the bankruptcy court’s denial of the Rule 60(b) motion, however, because the court’s order did not constitute an abuse of discretion.[1]
I
The Constitutionality of the BAP
In Northern Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court invalidated the trial court jurisdiction accorded bankruptcy judges by the Bankruptcy Reform Act of 1978. The bankruptcy judges’ powers violated the Constitution, the Court held, because bankruptcy judges exercised the judicial power of the United States under Article III of the Constitution, but were not afforded the tenure and salary protections required by Article III. Id. at 53, 87, 102 S.Ct. at 2862, 2880. The Court held that Congress could not accord an Article I court jurisdiction over the type *984 of claim involved in Marathon—a state law action by the bankruptcy trustee that was not integral to the core bankruptcy function of restructuring debtor-creditor rights. Id. at 71-72, 90-91, 102 S.Ct. at 2871-2872, 2881-2882. The Court also held that bankruptcy judges did not function as true adjuncts of Article III courts because Article III courts exercised too little control over their activities, and because Article III courts did not control closely enough the final decision in matters submitted to bankruptcy judges. Id. at 82-87, 102 S.Ct. at 2877-2880.
To prevent undue disruption, the Court held that the Marathon decision would not apply to judgments entered by bankruptcy judges before October 4, 1982. Id. at 88, 102 S.Ct. at 2880. The Court later extended this stay to December 24, 1982. 459 U.S. 813, 103 S.Ct. 199-200, 662, 74 L.Ed.2d 160 (1982).
The present case concerns the effect of the Marathon decision on the appellate functions of bankruptcy judges under the 1978 Act. The Act provides that a party may appeal an adverse ruling of a bankruptcy judge to the district court. 28 U.S.C. § 1334. The judicial council of a court of appeals, however, may order that appeals from bankruptcy courts be decided by a bankruptcy appellate panel comprised of three bankruptcy judges, instead of by the district court. 28 U.S.C. §§ 160, 1482. The Ninth Circuit council established a BAP to hear appeals from selected districts, including the district from which the current appeal arises. Following the Marathon decision, the Ninth Circuit council directed the BAP to decide only those cases in which judgment was entered by the bankruptcy court before December 24, 1982. The order appealed from here was entered by the bankruptcy court on May 28, 1981. The decision of the BAP was entered on December 28, 1982, after the stay in Marathon expired.
Burley contends that the bankruptcy judges’ authority to enter appellate decisions expired on December 24, 1982 along with their authority to enter trial decisions. We do not agree.
A. Did Marathon Remove Jurisdiction from the BAP?
Burley first contends that Marathon directly invalidated the statutory provision establishing the jurisdiction of the BAP.
The jurisdiction of the BAP is established by 28 U.S.C. § 1482. Section 1482 is part of section 241(a) of the Bankruptcy Act of 1978. Burley argues that Marathon struck down all of section 241(a). We disagree. Instead, we agree with all other circuits that have addressed the issue that Marathon struck down only the trial court jurisdiction of the bankruptcy judges in 28 U.S.C. § 1471(c). See Salomon v. Kaiser, 722 F.2d 1574 (2d Cir.1983); Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 200 (3d Cir.), cert. denied, — U.S. -, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983); White Motors Corp. v. Citibank, 704 F.2d 254, 259-61 (6th Cir.1983); In re Hansen, 702 F.2d 728, 729 (8th Cir.1983), cert. denied, — U.S. -, 103 S.Ct. 3539, 77 L.Ed.2d 1389 (1983); In re Braniff Airways, Inc., 700 F.2d 214, 215 (5th Cir.), cert. denied, — U.S. -, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983).
A BAP may decide only those appeals involving judgments entered before the stay in Marathon expired. Section 1482 affords the BAP jurisdiction over appeals from judgments and orders entered by bankruptcy judges. Because the bankruptcy judges lost all statutory power to enter such orders and judgments after December 24, 1982, the BAP has no jurisdiction to decide appeals from judgments entered after that date. Judgments and orders entered by bankruptcy judges after that date under the Emergency Rule are entered on behalf of the district court and, as such, are not appealable to the BAP under section 1482.[2]
*985 B. Does the Logic of Marathon Render the BAP Unconstitutional?
Burley next argues that the logic, if not the direct holding, of Marathon prevents the BAP from entering decisions after the stay expired. Burley cites the following language in Marathon for the proposition that Article III applies at the appellate as well as the trial level.
Our precedents make it clear that the constitutional requirements for the exercise of the judicial power must be met at all stages of adjudication, and not only on appeal____
458 U.S. at 86 n. 39,102 S.Ct. at 2879 n. 39. He argues that the BAP, to function lawfully, must thus be comprised of Article III judges.
Burley’s argument is supported by the decision of the First Circuit BAP in In re Dartmouth House Nursing Home, Inc., 30 B.R. 56 (Bankr.App. 1st Cir.1983), aff'd on other grounds, 726 F.2d 26 (1st Cir.1984).[3] That case held that under Marathon a BAP could not enter decisions after December 24, 1982. Dartmouth House adopted the logic that because the BAP judges were not appointed under Article III and because the Article III requirements apply at the appellate level, the BAP is unconstitutional.
It is obvious that if Congress cannot constitutionally establish non-Article III courts to exercise jurisdiction over the wide range of issues encompassed by section 1471 at the trial level, than it cannot establish non-Article III courts to hear the same issues at the appellate level.
30 B.R. at 62.
We disagree with the BAP decision in Dartmouth House because its reasoning omitted an important step. Marathon stated that non-Article III officers may constitutionally perform judicial functions so long as an Article III judge retains the “essential attributes of the judicial power.” See 458 U.S. at 80-81, 102 S.Ct. at 2876-2877. The role of the BAP in the appellate process is constitutional because the court of appeals retains those “essential attributes....”
Marathon did not discuss what role a non-Article III officer could play in the appellate process or, more specifically, whether the role of the BAP is consistent with Article III.
Marathon did hold that the right to appeal a bankruptcy judge’s order to an Article III court does not cure the constitutional problems created by the broad jurisdiction accorded the bankruptcy judges. The Court noted that the bankruptcy judges’ power to make findings of fact is a key judicial function, and that the power of a court to set aside those findings on appeal is limited under the clearly erroneous standard of review. The Court concluded that the district court does not retain the “essential attributes of the judicial power,” because it does not have sufficient control over the ultimate decision. See id. at 84-86 & n. 39, 102 S.Ct. at 2878-2879 & n. 39.
Article III judges may, however, overturn appellate decisions of a BAP more *986 freely than they may overturn trial decisions of a bankruptcy judge. Both the BAP and the court of appeals review all questions of law de novo and all findings of fact under the clearly erroneous standard. See id. at 55 n. 5, 102 S.Ct. at 2863 n. 5. Because the court of appeals and the BAP apply the same standard of review to the underlying judgment, the court of appeals effectively reviews the decisions of the BAP de novo. See In re Mistura, 705 F.2d 1496, 1497 (9th Cir.1983). This close review contrasts sharply with the deference for bankruptcy judges’ findings of fact that Marathon found fatal.
We conclude that the BAP is constitutional under United States v. Raddatz, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), as an adjunct to the court of appeals. Raddatz, cited with approval in Marathon, upheld the provisions of the Federal Magistrates Act authorizing district judges to refer to magistrates motions to suppress evidence. The Court held that the Magistrates Act did not violate Article III because a magistrate makes only a recommendation that is reviewed de novo by a district judge. The district judge therefore makes the final decision. Because the court of appeals reviews the BAP’s decision de novo and retains full power to make the final decision, the relationship between the BAP and the court of appeals is functionally equivalent to the relationship between a magistrate and a district judge.
The court of appeals also retains control over the BAP in that the BAP can be established only by order of the circuit council. See 28 U.S.C. § 160. Thus, in authorizing the BAPs, Congress did not remove jurisdiction from the courts of appeals. The BAP is an aid that the circuit council may or may not choose to employ. The Supreme Court relied in part on the similar discretion of the district court not to refer matters to magistrates in upholding the Magistrates Act in Raddatz. See 447 U.S. at 681, 685-86, 100 S.Ct. at 2415, 2417-18. Three circuits have also relied in part upon this factor in upholding 28 U.S.C. § 636(c), which allows magistrates to try civil cases with the consent of the parties. See Collins v. Foreman, 729 F.2d 108, at 114-115 (2d Cir.1984); Pacemaker Diagnostic Clinic v. Instromedix, 725 F.2d 537, 544-46 (9th Cir.1984) (en banc); Wharton-Thomas v. United States, 721 F.2d 922, 927, 929-30 (3d Cir.1983).
The analogy to the magistrate-district court relationship is admittedly not a perfect one. First, not all decisions of the BAP are subject to review by the court of appeals. The BAP has jurisdiction to hear appeals involving interlocutory orders of the bankruptcy court, but the court of appeals has no jurisdiction to review the BAP decision in those cases. Compare 28 U.S.C. § 1482 with 28 U.S.C. § 1293; see In re Rubin, 693 F.2d 73, 76-77 (9th Cir.1982). This difference between the role of a magistrate and that of the BAP is not of constitutional significance. The court of appeals retains sufficient control over the BAPs, notwithstanding the court’s inability to hear interlocutory appeals.
Second, unlike a magistrate’s recommendation, a BAP’s decision binds the parties pending review by the court of appeals. This does not render the BAP unconstitutional, however, because the BAP does not have power to enter a final judgment. See Marathon, 458 U.S. at 85-86 & n. 38, 102 S.Ct. at 2878-2879 & n. 38. Any final judgment will have been entered by the bankruptcy judge at the trial court level. In any case in which the BAP has jurisdiction, entry of the final judgment by the bankruptcy judge will have been constitutionally permissible under the stay in Marathon. If the BAP affirms, it does not alter this judgment. If the BAP reverses, the BAP does not enter a final judgment, but merely instructs the bankruptcy court. Moreover, where an appeal is taken to the court of appeals, the instructions to the trial court effectively come from the court of appeals.
We also acknowledge that parties in districts subject to the BAP are treated differently from parties in other districts. *987 Review by the BAP is a substitute for review by the district court. 28 U.S.C. §§ 1334, 1482. Thus, parties not in BAP districts receive review in the first instance by an Article III judge, while those in BAP districts do not. Furthermore, parties not in BAP districts can get review of interlocutory orders by an Article III judge, while those in BAP districts cannot.
That the BAP modifies the parties’ right to review does not render the BAP unconstitutional. Because there is no constitutional right to an appeal, see Ross v. Moffit, 417 U.S. 600, 611, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341 (1974), a fortiori there is no constitutional right to two levels of appeal or to immediate review of interlocutory decisions by an Article III judge.
Several decisions have stated that where appellate review is provided, it must be afforded on an equal basis. See, e.g., Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). This equal protection analysis, however, has been applied almost exclusively to criminal appeals. The only instance in which similar principles have been applied in a civil case is Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). Boddie held that a state must waive the filing fee for indigents in divorce proceedings because the state has a monopoly over marriage and divorce. In United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), the Court held that neither due process nor equal protection requires the government to waive the filing fee for indigents in bankruptcy proceedings.
The Court distinguished Boddie on the basis that bankruptcy is not the sole means of readjusting debts, and held that the minimum rationality test applies to equal protection claims related to bankruptcy legislation. 409 U.S. at 445-6, 93 S.Ct. at 637-8. The legislation authorizing the circuits to establish BAPs meets the minimum rationality test because it provides for review by judges with expertise in bankruptcy law. See also Ortwein v. Schwab, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973) (state need not waive filing fee for indigent in suit seeking review of administrative determination of benefits); L. Tribe, American Constitutional Law 1008-10, 1109-12 (1978).
The relationship between the BAP and the court of appeals is not identical in every respect to the relationship between the magistrate and the district court. The logic of Raddatz, however, is not necessarily limited to the precise facts of that case. We believe that the court of appeals retains all of the essential attributes of the judicial power that were retained by the district court in Raddatz. The court of appeals retains the power to make the final determination of all questions because it reviews decisions of the BAP de novo. The circuit council also makes the choice whether or not to establish a BAP. Thus, we conclude that the continued functioning of the BAP is consistent with Article III and the Marathon decision.
II
Relief from Judgment
Burley argues finally that the BAP erred in reversing the bankruptcy court order denying Briney’s motion for relief from judgment under Fed.R.Civ.P. 60(b). We agree.
Burley filed for bankruptcy in the Central District of California. The court set deadlines of November 26, 1980 for filing complaints regarding dischargeability, and December 24, 1980 for filing objections to discharge. An October 27, 1980 letter of Briney’s attorney indicated that he was aware of these deadlines. On November 26, 1980, Briney filed a complaint in the Bankruptcy Court for the District of Colorado seeking to prevent the discharge of Burley’s obligations to Briney. The California court scheduled the discharge hearing for February 5, 1981. Briney filed no complaints or objections in the California bankruptcy court and did not appear at the discharge hearing. After the hearing, Briney wrote a letter to the California court requesting a delay of entry of the discharge. The district court entered judg *988 ment granting the discharge. Briney filed a timely motion for relief from that judgment under Fed.R.Civ.P. 60(b).
The bankruptcy court found that there was no basis for relief from judgment under Rule 60(b), because Colorado was not a proper venue in which to file the objection to discharge, and because Briney had filed the objection there in bad faith. See In re Burley, 11 B.R. 369, 390-91 (Bankr.C.D.Cal.1981). The BAP reversed on the basis that Colorado was a proper venue in which to file the objection. See In re Burley, 27 B.R. 603, 604-05 (Bankr. 9th Cir.1982).
We need not address the meaning of the venue provisions of the bankruptcy code. We conclude that the bankruptcy court did not err in denying the Rule 60(b) motion, whether or not Colorado was a proper venue for the objection.
An appellate court may set aside a trial court’s denial of a Rule 60(b) motion only if the denial constitutes an abuse of discretion. See Plotkin v. Pacific Tel. and Tel. Co., 688 F.2d 1291, 1292 (9th Cir.1982). The BAP must accord bankruptcy court orders the same deference. See In re Mistura, 705 F.2d 1496, 1497-98 (9th Cir.1983). As explained in Part I, we review the decision of the bankruptcy court under the same standard of review as the BAP, and thus need give no deference to the decision of the BAP. Id. at 1497.
It is undisputed that the California bankruptcy court had jurisdiction and venue to grant Burley’s discharge by virtue of the fact that the bankruptcy petition was filed there. See 28 U.S.C. §§ 1471(c), 1473(a). In re Powell, 29 B.R. 346, 348 (Bankr.D.Colo.1983). The filing of the objection to discharge in Colorado was in essence a second lawsuit raising the same issue. Generally, where a suit has been properly filed in one court, the filing of an identical suit in a second court does not deprive the first court of jurisdiction. See, e.g., Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952); Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 95-96 (9th Cir.1982). We know of no statute or decision providing that this general rule does not apply in bankruptcy proceedings. The venue transfer provisions of 28 U.S.C. § 1475 authorize a court to transfer proceedings, but do not authorize another bankruptcy court to remove proceedings from it. See In re National Shoes, Inc., 18 B.R. 507, 508-09 (Bankr.D.Me.1982).
Furthermore, the California court was not obliged to stay the discharge proceedings on its own motion when it received notice that the objection had been filed in Colorado. Where identical suits are pending in two courts, the court in which the first suit was filed should generally proceed to judgment. See Pacesetter, 678 F.2d at 95-96. It is also the general policy of the bankruptcy code that all proceedings in a bankruptcy case be conducted in the district in which the bankruptcy petition was filed, except where the code expressly specifies another venue. See In re the Lionel Corp., 24 B.R. 141, 143 (Bankr.S.D.N.Y.1982); National Shoes, 18 B.R. at 509. The California court was entitled to rely on these general policies because Briney filed the motion requesting delay only after the discharge hearing had already been completed.
Nor did the California bankruptcy court err in refusing to reopen the judgment to permit Briney to contest the discharge. Briney had timely notice of the California discharge hearing, and knew, or should have known, that the filing of the objection in Colorado did not prevent the California court from granting the discharge. We cannot conclude that the bankruptcy court abused its discretion in finding that Briney failed to contest the discharge properly because of mistake, inadvertence, excusable neglect, or any other reason cognizable under Rule 60(b). See Plotkin, 688 F.2d at 1293.
REVERSED.

. We assume that the reader will be guided by our language in determining our holding. We therefore withhold comment on certain erroneous conclusions in the dissent.

. The Judicial Conference of the United States issued the model "Emergency Rule” following the Marathon decision and recommended that all district courts adopt it when the stay in Marathon expired. The Rule was adopted, with minor variations, by all the district courts in the *985 Ninth Circuit. Through the Emergency Rule, the district courts refer all bankruptcy cases and proceedings to bankruptcy judges, who make recommendations and enter certain orders and judgments on behalf of the district court, subject to later district court review. See White Motor Corp. v. Citibank, 704 F.2d 254, 256-57, 261-64 (6th Cir.1983) (upholding validity of the Emergency Rule).

. The First Circuit affirmed in Dartmouth House on the basis that the Emergency Rule adopted by the First Circuit council on December 24, 1982 implicitly repealed authorization for the BAP as of that date. In re Dartmouth House Nursing Home, Inc., 726 F.2d 26, 28-30 (1st Cir.1984). Thus, the First Circuit did not reach the constitutional issue raised here. The Ninth Circuit BAP did not lose jurisdiction through the adoption of the Emergency Rule. The Ninth Circuit council entered an order on December 28, 1982, expressly providing that the BAP shall decide all cases in which the bankruptcy court order was entered before December 24, 1982, and that the Emergency Rule applies only to cases in which the bankruptcy court order is entered after December 24, 1982. See id. at 29 n. 4 (distinguishing action taken by Ninth Circuit council).