738 F.2d 981
 10 Collier Bankr.Cas.2d 1339, Bankr. L. Rep. P 69,923
In re James A. BURLEY and Elsie M. Burley, Debtors.
B.H. BRINEY and Lucile Briney, Creditors/Appellees,
v.
James A. BURLEY and Elsie M. Burley, Debtors/Appellants.
 No. 83-5565.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 4, 1984.
Decided July 3, 1984.
As Amended July 26, 1984.
 
 Yale Harlow, Pomona, Cal., for creditors/appellees.
 Richard Levin, Stutman, Treister & Glatt, Los Angeles, Cal., for debtors/appellants.
 Appeal from the Bankruptcy Appellate Panel.
 Before CHOY, FARRIS, and NORRIS, Circuit Judges.
 FARRIS, Circuit Judge:
 
 
 1
 Burley appeals from a decision of the bankruptcy appellate panel (BAP). The BAP reversed the bankruptcy court's denial of a creditor's Fed.R.Civ.P. 60(b) motion to set aside the discharge of Burley's debts.
 
 
 2
 Burley contends that the BAP decision is invalid: (1) because the BAP was rendered unconstitutional by the Supreme Court's decision in Northern Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); and (2) because the BAP did not apply the correct standard of review.
 
 
 3
 We hold that the BAP may issue decisions in all cases in which the order of the bankruptcy court was entered before entry of the mandate in Marathon. We reverse the BAP's decision setting aside the bankruptcy court's denial of the Rule 60(b) motion, however, because the court's order did not constitute an abuse of discretion.[1]
 
 
 4
 * The Constitutionality of the BAP
 
 
 5
 In Northern Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court invalidated the trial court jurisdiction accorded bankruptcy judges by the Bankruptcy Reform Act of 1978. The bankruptcy judges' powers violated the Constitution, the Court held, because bankruptcy judges exercised the judicial power of the United States under Article III of the Constitution, but were not afforded the tenure and salary protections required by Article III. Id. at 53, 87, 102 S.Ct. at 2862, 2880. The Court held that Congress could not accord an Article I court jurisdiction over the type of claim involved in Marathon --a state law action by the bankruptcy trustee that was not integral to the core bankruptcy function of restructuring debtor-creditor rights. Id. at 71-72, 90-91, 102 S.Ct. at 2871-2872, 2881-2882. The Court also held that bankruptcy judges did not function as true adjuncts of Article III courts because Article III courts exercised too little control over their activities, and because Article III courts did not control closely enough the final decision in matters submitted to bankruptcy judges. Id. at 82-87, 102 S.Ct. at 2877-2880.
 
 
 6
 To prevent undue disruption, the Court held that the Marathon decision would not apply to judgments entered by bankruptcy judges before October 4, 1982. Id. at 88, 102 S.Ct. at 2880. The Court later extended this stay to December 24, 1982. 459 U.S. 813, 103 S.Ct. 199-200, 662, 74 L.Ed.2d 160 (1982).
 
 
 7
 The present case concerns the effect of the Marathon decision on the appellate functions of bankruptcy judges under the 1978 Act. The Act provides that a party may appeal an adverse ruling of a bankruptcy judge to the district court. 28 U.S.C. Sec. 1334. The judicial council of a court of appeals, however, may order that appeals from bankruptcy courts be decided by a bankruptcy appellate panel comprised of three bankruptcy judges, instead of by the district court. 28 U.S.C. Secs. 160, 1482. The Ninth Circuit council established a BAP to hear appeals from selected districts, including the district from which the current appeal arises. Following the Marathon decision, the Ninth Circuit council directed the BAP to decide only those cases in which judgment was entered by the bankruptcy court before December 24, 1982. The order appealed from here was entered by the bankruptcy court on May 28, 1981. The decision of the BAP was entered on December 28, 1982, after the stay in Marathon expired.
 
 
 8
 Burley contends that the bankruptcy judges' authority to enter appellate decisions expired on December 24, 1982 along with their authority to enter trial decisions. We do not agree.
 
 
 9
 A. Did Marathon Remove Jurisdiction from the BAP?
 
 
 10
 Burley first contends that Marathon directly invalidated the statutory provision establishing the jurisdiction of the BAP.
 
 
 11
 The jurisdiction of the BAP is established by 28 U.S.C. Sec. 1482. Section 1482 is part of section 241(a) of the Bankruptcy Act of 1978. Burley argues that Marathon struck down all of section 241(a). We disagree. Instead, we agree with all other circuits that have addressed the issue that Marathon struck down only the trial court jurisdiction of the bankruptcy judges in 28 U.S.C. Sec. 1471(c). See Salomon v. Kaiser, 722 F.2d 1574 (2d Cir.1983); Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 200 (3d Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983); White Motors Corp. v. Citibank, 704 F.2d 254, 259-61 (6th Cir.1983); In re Hansen, 702 F.2d 728, 729 (8th Cir.1983), cert. denied, --- U.S. ----, 103 S.Ct. 3539, 77 L.Ed.2d 1389 (1983); In re Braniff Airways, Inc., 700 F.2d 214, 215 (5th Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983).
 
 
 12
 A BAP may decide only those appeals involving judgments entered before the stay in Marathon expired. Section 1482 affords the BAP jurisdiction over appeals from judgments and orders entered by bankruptcy judges. Because the bankruptcy judges lost all statutory power to enter such orders and judgments after December 24, 1982, the BAP has no jurisdiction to decide appeals from judgments entered after that date. Judgments and orders entered by bankruptcy judges after that date under the Emergency Rule are entered on behalf of the district court and, as such, are not appealable to the BAP under section 1482.[2]B. Does the Logic of Marathon Render the BAP Unconstitutional?
 
 
 13
 Burley next argues that the logic, if not the direct holding, of Marathon prevents the BAP from entering decisions after the stay expired. Burley cites the following language in Marathon for the proposition that Article III applies at the appellate as well as the trial level.
 
 
 14
 Our precedents make it clear that the constitutional requirements for the exercise of the judicial power must be met at all stages of adjudication, and not only on appeal ....
 
 
 15
 458 U.S. at 86 n. 39, 102 S.Ct. at 2879 n. 39. He argues that the BAP, to function lawfully, must thus be comprised of Article III judges.
 
 
 16
 Burley's argument is supported by the decision of the First Circuit BAP in In re Dartmouth House Nursing Home, Inc., 30 B.R. 56 (Bankr.App. 1st Cir.1983), aff'd on other grounds, 726 F.2d 26 (1st Cir.1984).[3] That case held that under Marathon a BAP could not enter decisions after December 24, 1982. Dartmouth House adopted the logic that because the BAP judges were not appointed under Article III and because the Article III requirements apply at the appellate level, the BAP is unconstitutional.
 
 
 17
 It is obvious that if Congress cannot constitutionally establish non-Article III courts to exercise jurisdiction over the wide range of issues encompassed by section 1471 at the trial level, than it cannot establish non-Article III courts to hear the same issues at the appellate level.
 
 
 18
 30 B.R. at 62.
 
 
 19
 We disagree with the BAP decision in Dartmouth House because its reasoning omitted an important step. Marathon stated that non-Article III officers may constitutionally perform judicial functions so long as an Article III judge retains the "essential attributes of the judicial power." See 458 U.S. at 80-81, 102 S.Ct. at 2876-2877. The role of the BAP in the appellate process is constitutional because the court of appeals retains those "essential attributes...."
 
 
 20
 Marathon did not discuss what role a non-Article III officer could play in the appellate process or, more specifically, whether the role of the BAP is consistent with Article III.
 
 
 21
 Marathon did hold that the right to appeal a bankruptcy judge's order to an Article III court does not cure the constitutional problems created by the broad jurisdiction accorded the bankruptcy judges. The Court noted that the bankruptcy judges' power to make findings of fact is a key judicial function, and that the power of a court to set aside those findings on appeal is limited under the clearly erroneous standard of review. The Court concluded that the district court does not retain the "essential attributes of the judicial power," because it does not have sufficient control over the ultimate decision. See id. at 84-86 & n. 39, 102 S.Ct. at 2878-2879 & n. 39.
 
 
 22
 Article III judges may, however, overturn appellate decisions of a BAP more freely than they may overturn trial decisions of a bankruptcy judge. Both the BAP and the court of appeals review all questions of law de novo and all findings of fact under the clearly erroneous standard. See id. at 55 n. 5, 102 S.Ct. at 2863 n. 5. Because the court of appeals and the BAP apply the same standard of review to the underlying judgment, the court of appeals effectively reviews the decisions of the BAP de novo. See In re Mistura, 705 F.2d 1496, 1497 (9th Cir.1983). This close review contrasts sharply with the deference for bankruptcy judges' findings of fact that Marathon found fatal.
 
 
 23
 We conclude that the BAP is constitutional under United States v. Raddatz, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), as an adjunct to the court of appeals. Raddatz, cited with approval in Marathon, upheld the provisions of the Federal Magistrates Act authorizing district judges to refer to magistrates motions to suppress evidence. The Court held that the Magistrates Act did not violate Article III because a magistrate makes only a recommendation that is reviewed de novo by a district judge. The district judge therefore makes the final decision. Because the court of appeals reviews the BAP's decision de novo and retains full power to make the final decision, the relationship between the BAP and the court of appeals is functionally equivalent to the relationship between a magistrate and a district judge.
 
 
 24
 The court of appeals also retains control over the BAP in that the BAP can be established only by order of the circuit council. See 28 U.S.C. Sec. 160. Thus, in authorizing the BAPs, Congress did not remove jurisdiction from the courts of appeals. The BAP is an aid that the circuit council may or may not choose to employ. The Supreme Court relied in part on the similar discretion of the district court not to refer matters to magistrates in upholding the Magistrates Act in Raddatz. See 447 U.S. at 681, 685-86, 100 S.Ct. at 2415, 2417-18. Three circuits have also relied in part upon this factor in upholding 28 U.S.C. Sec. 636(c), which allows magistrates to try civil cases with the consent of the parties. See Collins v. Foreman, 729 F.2d 108, at 114-115 (2d Cir.1984); Pacemaker Diagnostic Clinic v. Instromedix, 725 F.2d 537, 544-46 (9th Cir.1984) (en banc); Wharton-Thomas v. United States, 721 F.2d 922, 927, 929-30 (3d Cir.1983).
 
 
 25
 The analogy to the magistrate-district court relationship is admittedly not a perfect one. First, not all decisions of the BAP are subject to review by the court of appeals. The BAP has jurisdiction to hear appeals involving interlocutory orders of the bankruptcy court, but the court of appeals has no jurisdiction to review the BAP decision in those cases. Compare 28 U.S.C. Sec. 1482 with 28 U.S.C. Sec. 1293; see In re Rubin, 693 F.2d 73, 76-77 (9th Cir.1982). This difference between the role of a magistrate and that of the BAP is not of constitutional significance. The court of appeals retains sufficient control over the BAPs, notwithstanding the court's inability to hear interlocutory appeals.
 
 
 26
 Second, unlike a magistrate's recommendation, a BAP's decision binds the parties pending review by the court of appeals. This does not render the BAP unconstitutional, however, because the BAP does not have power to enter a final judgment. See Marathon, 458 U.S. at 85-86 & n. 38, 102 S.Ct. at 2878-2879 & n. 38. Any final judgment will have been entered by the bankruptcy judge at the trial court level. In any case in which the BAP has jurisdiction, entry of the final judgment by the bankruptcy judge will have been constitutionally permissible under the stay in Marathon. If the BAP affirms, it does not alter this judgment. If the BAP reverses, the BAP does not enter a final judgment, but merely instructs the bankruptcy court. Moreover, where an appeal is taken to the court of appeals, the instructions to the trial court effectively come from the court of appeals.
 
 
 27
 We also acknowledge that parties in districts subject to the BAP are treated differently from parties in other districts. Review by the BAP is a substitute for review by the district court. 28 U.S.C. Secs. 1334, 1482. Thus, parties not in BAP districts receive review in the first instance by an Article III judge, while those in BAP districts do not. Furthermore, parties not in BAP districts can get review of interlocutory orders by an Article III judge, while those in BAP districts cannot.
 
 
 28
 That the BAP modifies the parties' right to review does not render the BAP unconstitutional. Because there is no constitutional right to an appeal, see Ross v. Moffit, 417 U.S. 600, 611, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341 (1974), a fortiori there is no constitutional right to two levels of appeal or to immediate review of interlocutory decisions by an Article III judge.
 
 
 29
 Several decisions have stated that where appellate review is provided, it must be afforded on an equal basis. See, e.g., Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). This equal protection analysis, however, has been applied almost exclusively to criminal appeals. The only instance in which similar principles have been applied in a civil case is Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). Boddie held that a state must waive the filing fee for indigents in divorce proceedings because the state has a monopoly over marriage and divorce. In United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), the Court held that neither due process nor equal protection requires the government to waive the filing fee for indigents in bankruptcy proceedings.
 
 
 30
 The Court distinguished Boddie on the basis that bankruptcy is not the sole means of readjusting debts, and held that the minimum rationality test applies to equal protection claims related to bankruptcy legislation. 409 U.S. at 445-6, 93 S.Ct. at 637-8. The legislation authorizing the circuits to establish BAPs meets the minimum rationality test because it provides for review by judges with expertise in bankruptcy law. See also Ortwein v. Schwab, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973) (state need not waive filing fee for indigent in suit seeking review of administrative determination of benefits); L. Tribe, American Constitutional Law 1008-10, 1109-12 (1978).
 
 
 31
 The relationship between the BAP and the court of appeals is not identical in every respect to the relationship between the magistrate and the district court. The logic of Raddatz, however, is not necessarily limited to the precise facts of that case. We believe that the court of appeals retains all of the essential attributes of the judicial power that were retained by the district court in Raddatz. The court of appeals retains the power to make the final determination of all questions because it reviews decisions of the BAP de novo. The circuit council also makes the choice whether or not to establish a BAP. Thus, we conclude that the continued functioning of the BAP is consistent with Article III and the Marathon decision.
 
 II
 Relief from Judgment
 
 32
 Burley argues finally that the BAP erred in reversing the bankruptcy court order denying Briney's motion for relief from judgment under Fed.R.Civ.P. 60(b). We agree.
 
 
 33
 Burley filed for bankruptcy in the Central District of California. The court set deadlines of November 26, 1980 for filing complaints regarding dischargeability, and December 24, 1980 for filing objections to discharge. An October 27, 1980 letter of Briney's attorney indicated that he was aware of these deadlines. On November 26, 1980, Briney filed a complaint in the Bankruptcy Court for the District of Colorado seeking to prevent the discharge of Burley's obligations to Briney. The California court scheduled the discharge hearing for February 5, 1981. Briney filed no complaints or objections in the California bankruptcy court and did not appear at the discharge hearing. After the hearing, Briney wrote a letter to the California court requesting a delay of entry of the discharge. The district court entered judgment granting the discharge. Briney filed a timely motion for relief from that judgment under Fed.R.Civ.P. 60(b).
 
 
 34
 The bankruptcy court found that there was no basis for relief from judgment under Rule 60(b), because Colorado was not a proper venue in which to file the objection to discharge, and because Briney had filed the objection there in bad faith. See In re Burley, 11 B.R. 369, 390-91 (Bankr.C.D.Cal.1981). The BAP reversed on the basis that Colorado was a proper venue in which to file the objection. See In re Burley, 27 B.R. 603, 604-05 (Bankr. 9th Cir.1982).
 
 
 35
 We need not address the meaning of the venue provisions of the bankruptcy code. We conclude that the bankruptcy court did not err in denying the Rule 60(b) motion, whether or not Colorado was a proper venue for the objection.
 
 
 36
 An appellate court may set aside a trial court's denial of a Rule 60(b) motion only if the denial constitutes an abuse of discretion. See Plotkin v. Pacific Tel. and Tel. Co., 688 F.2d 1291, 1292 (9th Cir.1982). The BAP must accord bankruptcy court orders the same deference. See In re Mistura, 705 F.2d 1496, 1497-98 (9th Cir.1983). As explained in Part I, we review the decision of the bankruptcy court under the same standard of review as the BAP, and thus need give no deference to the decision of the BAP. Id. at 1497.
 
 
 37
 It is undisputed that the California bankruptcy court had jurisdiction and venue to grant Burley's discharge by virtue of the fact that the bankruptcy petition was filed there. See 28 U.S.C. Secs. 1471(c), 1473(a). In re Powell, 29 B.R. 346, 348 (Bankr.D.Colo.1983). The filing of the objection to discharge in Colorado was in essence a second lawsuit raising the same issue. Generally, where a suit has been properly filed in one court, the filing of an identical suit in a second court does not deprive the first court of jurisdiction. See, e.g., Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952); Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 95-96 (9th Cir.1982). We know of no statute or decision providing that this general rule does not apply in bankruptcy proceedings. The venue transfer provisions of 28 U.S.C. Sec. 1475 authorize a court to transfer proceedings, but do not authorize another bankruptcy court to remove proceedings from it. See In re National Shoes, Inc., 18 B.R. 507, 508-09 (Bankr.D.Me.1982).
 
 
 38
 Furthermore, the California court was not obliged to stay the discharge proceedings on its own motion when it received notice that the objection had been filed in Colorado. Where identical suits are pending in two courts, the court in which the first suit was filed should generally proceed to judgment. See Pacesetter, 678 F.2d at 95-96. It is also the general policy of the bankruptcy code that all proceedings in a bankruptcy case be conducted in the district in which the bankruptcy petition was filed, except where the code expressly specifies another venue. See In re the Lionel Corp., 24 B.R. 141, 143 (Bankr.S.D.N.Y.1982); National Shoes, 18 B.R. at 509. The California court was entitled to rely on these general policies because Briney filed the motion requesting delay only after the discharge hearing had already been completed.
 
 
 39
 Nor did the California bankruptcy court err in refusing to reopen the judgment to permit Briney to contest the discharge. Briney had timely notice of the California discharge hearing, and knew, or should have known, that the filing of the objection in Colorado did not prevent the California court from granting the discharge. We cannot conclude that the bankruptcy court abused its discretion in finding that Briney failed to contest the discharge properly because of mistake, inadvertence, excusable neglect, or any other reason cognizable under Rule 60(b). See Plotkin, 688 F.2d at 1293.
 
 
 40
 REVERSED.
 
 NORRIS, Circuit Judge, dissenting:
 
 41
 We have before us the constitutionality of the Ninth Circuit's Order Establishing Appellate Review Procedures in Bankruptcy Cases. The Order was promulgated on December 28, 1982, in order to provide procedures for the appellate review of bankruptcy decisions in the wake of the Supreme Court's decision in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In pertinent part, it provides:
 
 
 42
 The bankruptcy appellate panels shall consider and resolve all appeals in which the order or judgment to be reviewed has been entered by the bankruptcy judge before the filing of judgment in Marathon.
 
 
 43
 The bankruptcy appellate panels shall not consider and resolve any appeals in which the order of judgment to be reviewed is entered by the bankruptcy judge after the filing of judgment in Marathon.
 
 
 44
 Appellants contend that in providing for continued bankruptcy appellate panel (BAP) jurisdiction over appeals from bankruptcy opinions entered prior to the filing of judgment in Marathon, the Order violates the constitutional principles set forth in Marathon and preceding Supreme Court cases.
 
 
 45
 The majority rejects appellants' claim because, while the BAP's perform judicial functions, article III judges "retain the 'essential attributes of the judicial power.' " Supra at 985 (quoting Marathon, 458 U.S. at 80-81, 102 S.Ct. at 2876-2877). The majority bases this contention on the Supreme Court's decision in United States v. Raddatz, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), which upheld a provision of the Federal Magistrates Act, 28 U.S.C. Sec. 636(b)(1)(B), permitting a district court to refer to a magistrate a motion to suppress evidence. The majority argues that "the relationship between the BAP and the court of appeals is functionally equivalent to the relationship between a magistrate and a district judge"--a relationship which, according to the decision in Raddatz, left the "essential attributes of the judicial power" in article III hands. Supra at 985. In the majority's view, the relationship between the BAP and the court of appeals is "functionally equivalent" to the relationship between a magistrate and a district judge for two reasons. First and foremost, just as a district judge is required to review independently the decisions of a magistrate, see Raddatz, 447 U.S. at 682, 100 S.Ct. at 2415, the court of appeals reviews the decisions of the BAP's under what is, in effect, a de novo standard. Supra at 986. Second, according to the majority, the circuit council's power to determine whether or not to establish BAP's, see 28 U.S.C. Sec. 160, is analogous to the district court's authority to decide whether or not to refer a particular case to a magistrate, see Raddatz, 447 U.S. at 681, 100 S.Ct. at 2415. On the basis of these supposed similarities, the majority concludes that "the continued functioning of the BAP is consistent with article III." Supra at 987. I must disagree.
 
 
 46
 * Whatever the merits of the majority's analogy to Raddatz, it does not save the Ninth Circuit Order from unconstitutionality for the analogy is inapplicable to two large categories of decisions handed down by the BAP's: decisions not appealed to the court of appeals and decisions concerning interlocutory orders issued by the bankruptcy court. As the majority correctly indicates, the cornerstone of the Raddatz decision is the requirement that the district court subject the magistrate's proposed findings and recommendations to de novo review before entering a final order. It was on the basis of this requirement that the Supreme Court found that " '[t]he authority--and the responsibility--to make an informed, final determination ... remains with the judge,' " Raddatz, 447 U.S. at 682, 100 S.Ct. at 2415 (quoting Mathews v. Weber, 423 U.S. 261, 271, 96 S.Ct. 549, 554, 46 L.Ed.2d 483 (1976)), and held that the Magistrates Act meets article III standards. Id. 447 U.S. at 683, 100 S.Ct. at 2416. Decisions not appealed to the court of appeals and decisions concerning interlocutory orders, however, are not subject to de novo review, or any other form of review, in the court of appeals. Consequently, these types of decisions fall outside of the majority's Raddatz analysis.
 
 
 47
 Thus, before it can be concluded that "the continued functioning of the BAP is consistent with article III," these two classes of cases must be subjected to separate article III scrutiny.[1] The majority fails to undertake such an inquiry.[2] My own analysis indicates that article III standards are not met.
 
 II
 
 48
 In scrutinizing these two classes of cases, we should be guided by the Ninth Circuit's recent decision in Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc., 725 F.2d 537 (9th Cir.1984) (en banc). In Pacemaker, an en banc panel of this court elaborated on the requirements of article III. The panel noted that article III has two components: an individual rights component concerned with the litigants' right to an independent and unbiased judge, and an institutional component designed to ensure the separation and independence of the judiciary. Both components, the panel stated, must be satisfied if the requirements of article III are to be met. Id. at 541. Thus, to pass constitutional muster, the BAP's authority to review cases not thereafter appealed to the court of appeals and to review interlocutory orders must offend neither of these article III values.
 
 
 49
 * I turn first to consideration of BAP decisions which are not appealed to the circuit court. As the majority notes, where the "essential attributes of the judicial power" are retained by article III judges, the requirements of article III--both individual rights and institutional--are satisfied.[3] Thus, in United States v. Raddatz, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), the Supreme Court upheld the reference of a motion to a magistrate even though the moving party had opposed the reference. The Court held that because " '[t]he authority--and the responsibility--to make an informed, final determination ... remain[ed] with the judge,' " id. at 682, 100 S.Ct. at 2415 (quoting Mathews v. Weber, 423 U.S. 261, 271, 96 S.Ct. 549, 554, 46 L.Ed.2d 483 (1976)), the reference was constitutionally permissible.
 
 
 50
 In determining whether the essential attributes of judicial power remain in article III hands, courts generally have looked to two forms of article III oversight: direct control over or review of the individual case and broader administrative control over the system of non-article III adjudication. Thus, in upholding, 28 U.S.C. Sec. 636(c), the Pacemaker court relied on the district court's power to cancel a reference to a magistrate and the judicial conference's power to select and remove magistrates. 725 F.2d at 546. See also United States v. Raddatz, 447 U.S. 667, 684-86, 100 S.Ct. 2406, 2416-18, 65 L.Ed.2d 424 (1980) (Blackmun, J., concurring).
 
 
 51
 Insofar as BAP decisions that are not appealed are concerned, there is, of course, no direct article III control over or review of the individual case. In this respect, the BAP system contrasts sharply with the statutes considered in Raddatz and Pacemaker. As already noted, in Raddatz, the statute in question required that an article III judge make a de novo review of the magistrate's proposed findings and recommendations before entering an order. 447 U.S. at 681-82, 100 S.Ct. at 2415-16. In Pacemaker, the provision before the court did not require de novo review, but it did permit an article III judge to revoke the reference to a magistrate at any time. 725 F.2d at 545. Here article III review is neither required nor permitted. If no appeal is taken, the BAP decision is shielded entirely from direct article III scrutiny.
 
 
 52
 This absence of direct article III scrutiny raises serious individual rights and institutional concerns. First, the individual litigant is permanently subject to the unreviewed judgment of a non-article III court. Second, in Pacemaker, we stated that "[i]f the essential, constitutional role of the judiciary is to be maintained, there must be both the appearance and the reality of control by article III judges over the interpretation, declaration, and application of federal law." Id. at 544. See also Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 86 n. 39, 102 S.Ct. 2858, 2879 n. 39, 73 L.Ed.2d 598 (1982). Here there is neither the appearance nor the reality of article III control. When neither of the parties to a case takes an appeal to the circuit court, legal precedent, binding on bankruptcy judges, is created by the unreviewable decision of non-article III judges.[4]
 
 
 53
 I seriously doubt that any system of administrative control--no matter how extensive--could alleviate these article III concerns. I believe that where, as here, there is a complete absence of direct article III scrutiny over the individual case, even the most extraordinary system of administrative controls is insufficient to satisfy the requirements of article III. To my knowledge, no federal court has ever held that administrative controls alone can satisfy article III. In both Raddatz and Pacemaker, for example, article III values were protected by administrative controls and direct supervision of individual cases. Moreover, it is difficult to see how any system of administrative control alone could ever adequately safeguard the individual rights and institutional values underlying article III. Such a system might, via the threat of sanctions or removal, discourage non-article III tribunals from making biased rulings. It could not ensure, however, that such decisions never would be made. And, in the absence of direct article III supervision of the individual case, when a biased decision was handed down there would be no mechanism for correcting the decision and vindicating article III values. The judicial conference might sanction or remove the offending judge, but both litigants and inferior judges would be bound by the decision in question.
 
 
 54
 But even if I were to conclude that some extraordinary system of administrative controls might adequately compensate for this complete absence of direct scrutiny over individual cases, the administrative controls provided for in the Bankruptcy Act are clearly inadequate. As the majority notes, supra at 986, the circuit council decides whether or not to establish BAP's. 28 U.S.C. Sec. 160(a). In addition, the chief judge of the circuit designates the members of the particular panels, id., and the circuit council has the authority to remove bankruptcy judges for incompetence, misconduct, neglect, or physical or mental disability, 28 U.S.C. Sec. 153.
 
 
 55
 The majority makes much of the first of these administrative protections--the circuit council's power to decide whether or not to establish BAP's. It analogizes this power to the district court's authority, under the Magistrates Act, to decide whether or not to refer cases to magistrates. Supra at 986. The comparison is far from apt, however. As we recently noted in Pacemaker, 725 F.2d at 545, the power to make and revoke references gives the district court the flexibility to consider the advisability of non-article III adjudication "in individual cases." Where--because a political branch of government is involved or because a substantial constitutional question is presented--it is more appropriate that an article III tribunal adjudicate the case, the district court has the freedom to retain direct control over the case. The BAP system, in contrast, permits no such flexibility. The circuit council is presented with a flat choice between having BAP's and not having BAP's. If a sensitive case arises after the BAP's have been created, the council has no recourse other than the total abolition of the system--a radical measure unlikely to be employed. Thus, the circuit council's power to create or abolish the BAP's offers little in the way of article III protection.
 
 
 56
 In sum, insofar as BAP decisions not appealed to the court of appeals are concerned, the BAP system does not meet article III standards. The "essentials of the judicial power" do not remain in article III hands. There is no direct article III control over individual cases, and the administrative supervision provided for in the Bankruptcy Act is insufficient to protect the values underlying article III.
 
 B
 
 57
 BAP decisions concerning interlocutory orders present essentially the same problems. Article III supervision over such decisions is as inadequate as article III supervision over cases not appealed to the circuit court. As the majority notes, supra at 986, decisions concerning interlocutory orders are not appealable to the circuit court. In re Rubin, 693 F.2d 73, 76-77 (9th Cir.1982). Thus, there is no direct control over or review of the individual decision by article III judges. And, as already noted, the administrative controls provided for in the Bankruptcy Act are insufficient to meet article III requirements.
 
 
 58
 The majority argues, however, that the absence of article III supervision is of no constitutional significance. First, the majority states that "[t]he court of appeals retains sufficient control over the BAP's, notwithstanding the court's inability to hear interlocutory appeals." Supra at 986. The precise meaning of this statement is obscure. But whatever its meaning it is incorrect. If the majority intends to claim that despite the absence of article III review of interlocutory appeals, the court of appeals retains sufficient control over the BAP's resolution of interlocutory appeals, the control which the majority finds sufficient is nothing more than the clearly inadequate administrative controls I have already discussed. If the majority intends to argue that despite the absence of article III review of interlocutory appeals, the court of appeals retains sufficient control over the BAP's resolution of cases generally, the majority is advancing the novel proposition that article III is satisfied even when "the essential attributes of the judicial power" are not retained by article III judges in all cases. To my knowledge, no federal court has ever before made such a claim.
 
 
 59
 Second, the majority states that "[b]ecause there is no constitutional right to an appeal ... a fortiori there is no constitutional right ... to immediate review of interlocutory decisions by an article III judge." Supra at 987. The majority's contention appears to be that since BAP review of interlocutory orders is not constitutionally compelled, it is not necessary to satisfy article III standards if such review is provided.
 
 
 60
 This argument ignores well-established constitutional doctrine. It is, in essence, an application of the right-privilege distinction to the field of appellate review. Since there is no right to appellate review, the government may provide any form of appellate review it deems appropriate. The right-privilege distinction has long been discredited, however. See, e.g., Sherbert v. Verner, 374 U.S. 398, 404, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965 (1963); Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv.L.Rev. 1439 (1968). In fact, the Supreme Court has implicitly rejected the right-privilege distinction in precisely this context. In Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Court struck down the jurisdiction of the bankruptcy courts under 28 U.S.C. Sec. 1471 despite the fact that there was no "right" to have a bankruptcy court or, for that matter, any federal forum adjudicate the state law claims there in issue.
 
 
 61
 In considering the merit of the majority's argument, it is important to remember that the Constitution compels very little in the way of federal original or appellate jurisdiction. Thus, acceptance of the majority's right-privilege analysis would completely eviscerate article III.[5]
 
 
 62
 In short, BAP review of interlocutory orders, like BAP resolution of cases not appealed thereafter to the circuit court, offends article III standards.
 
 III
 
 63
 In conclusion, the Supreme Court has repeatedly stated that "our Constitution unambiguously enunciates a fundamental principle--that the 'judicial Power of the United States' must be reposed in an independent Judiciary. It commands that the independence of the Judiciary be jealously guarded, and it provides clear institutional protections for that independence." Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 60, 102 S.Ct. 2858, 2866, 73 L.Ed.2d 598 (1982). See also United States v. Will, 449 U.S. 200, 217-18, 101 S.Ct. 471, 481-482, 66 L.Ed.2d 392 (1980). Today's majority opinion fails to accord sufficient weight to this "fundamental principle" and, in the process, comes perilously close to emasculating the requirements of article III of the Constitution.
 
 
 64
 The majority relies on an article III analysis which is entirely inapplicable to two substantial classes of cases decided by BAP's. When BAP review of these cases is subjected to separate article III scrutiny, it becomes clear that BAP jurisdiction offends both the individual rights and institutional components of article III. Because the Ninth Circuit Order Establishing Appellate Review Procedures in Bankruptcy grants the BAP's jurisdiction over these cases and because this grant is not readily severable from the Order's remaining grant of jurisdiction, the Order should be struck down. See Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 87-88 n. 40, 102 S.Ct. 2858, 2880 n. 40, 73 L.Ed.2d 598; id. at 91-92, 102 S.Ct. at 2881-2882 (Rehnquist, J., with whom O'Connor, J., joins, concurring in the judgment). By failing to do so, the majority ignores the clear dictates of article III. Consequently, I dissent.
 
 
 
 [1]
 We assume that the reader will be guided by our language in determining our holding. We therefore withhold comment on certain erroneous conclusions in the dissent
 
 
 [2]
 The Judicial Conference of the United States issued the model "Emergency Rule" following the Marathon decision and recommended that all district courts adopt it when the stay in Marathon expired. The Rule was adopted, with minor variations, by all the district courts in the Ninth Circuit. Through the Emergency Rule, the district courts refer all bankruptcy cases and proceedings to bankruptcy judges, who make recommendations and enter certain orders and judgments on behalf of the district court, subject to later district court review. See White Motor Corp. v. Citibank, 704 F.2d 254, 256-57, 261-64 (6th Cir.1983) (upholding validity of the Emergency Rule)
 
 
 [3]
 The First Circuit affirmed in Dartmouth House on the basis that the Emergency Rule adopted by the First Circuit council on December 24, 1982 implicitly repealed authorization for the BAP as of that date. In re Dartmouth House Nursing Home, Inc., 726 F.2d 26, 28-30 (1st Cir.1984). Thus, the First Circuit did not reach the constitutional issue raised here. The Ninth Circuit BAP did not lose jurisdiction through the adoption of the Emergency Rule. The Ninth Circuit council entered an order on December 28, 1982, expressly providing that the BAP shall decide all cases in which the bankruptcy court order was entered before December 24, 1982, and that the Emergency Rule applies only to cases in which the bankruptcy court order is entered after December 24, 1982. See id. at 29 n. 4 (distinguishing action taken by Ninth Circuit council)
 
 
 [1]
 This case does not fall within either of these categories. But because the Ninth Circuit Order's grant of jurisdiction over cases not appealed to the court of appeals and over decisions concerning interlocutory orders is not severable from the rest of the grant, see infra at 933, the constitutionality of the entire Order stands or falls on the constitutionality of BAP jurisdiction over those cases
 
 
 [2]
 The majority does concede that its analogy to the magistrate-district court relationship is "not a perfect one." Supra slip op. at 2917, at 986. It notes that there is no article III review of BAP decisions reviewing interlocutory orders. But the majority's discussion of this fact is brief and, as indicated below, infra at 986, inadequate. Moreover, the majority completely ignores the fact that many BAP decisions are never appealed to the court of appeals and thus receive no article III scrutiny
 
 
 [3]
 In Pacemaker, we held that the individual rights component of article III can also be satisfied by consent to the jurisdiction of a non-article III tribunal. 725 F.2d at 542. In Pacemaker, however, we made it clear that to be effective a waiver must be unforced. Id. at 543. See also 28 U.S.C. Sec. 636(c)(2). Here, consent, if it exists, is neither free nor voluntary. Here, in contrast to Pacemaker, the litigant must endure two non-article III adjudications--one before the bankruptcy court and another before the BAP--and the concomitant costs and delay before he even has the option of choosing an article III adjudication. By the time he obtains this option, he may no longer be able to afford--either in terms of money or time--continued litigation
 Even if I were to conclude that there was free and voluntary consent in these cases, however, it would not alter my analysis. In Pacemaker, we stated that "[s]tatutes or governmental actions which violate the separation of powers doctrine in its systemic aspect should be invalidated, as a general rule, despite waiver by affected private parties." Id. at 544. Because I conclude that BAP resolution of cases which are not appealed subsequently to the court of appeals "violate[s] the separation of powers doctrine in its systemic aspect," see infra, the presence or absence of consent is irrelevant.
 
 
 [4]
 In this respect, the BAP system poses a far more significant threat to article III institutional values than the systems under consideration in Raddatz and Pacemaker. In those cases, the decision of the non-article III tribunal had no precedential effect. Here, that is not the case
 
 
 [5]
 It appears that even the majority does not recognize the full import of its argument, for if one accepts the majority's position, it completely disposes of the case. To my knowledge, there is no right to appellate review of any bankruptcy court decision. Thus, according to the majority's line of reasoning, article III requirements are inapplicable to all BAP adjudications